NOT DESIGNATED FOR PUBLICATION

No. 118,012

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF K.C.S.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed June 15, 2018. Affirmed.

*Gerard C. Scott*, of Scott Law PA, of Wichita, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON and BRUNS, JJ.

PER CURIAM:  In an extended juvenile jurisdiction proceeding, K.C.S.—who is now an adult—appeals from the district court's revocation of the stay of his adult sentences for second-degree murder and attempted robbery. On appeal, K.C.S. contends that the State failed to serve him with proper statutory notice of the reasons alleged to exist for revocation of the stay of execution of his adult sentences. He also contends the district court was procedurally barred from lifting the stay of his adult sentences once the statutory notice was properly served. While we find that the State initially failed to provide K.C.S. with appropriate statutory notice by personal service or certified mail, it was ultimately able to personally serve him with notice of the reasons alleged to exist for revocation of the stay of his adult sentences. We also find that the district court properly lifted the stay at a hearing held after K.C.S. had been personally served. Thus, we affirm.

1

On February 1, 2013, the State charged K.C.S.—who was sixteen years old—with one count of first-degree felony murder and one count of aggravated robbery. On the same day, the State filed a motion in district court seeking authorization to prosecute K.C.S. as an adult. On July 31, 2013, K.C.S. entered into a plea agreement in which he agreed to plead no contest to amended charges of one count of second-degree murder and one count of attempted robbery.

In addition to reducing the charges, the State also agreed to request designation as an extended juvenile jurisdiction proceeding. Under the terms of the agreement, the district court would impose both a juvenile and an adult sentence but would stay the adult sentences if K.C.S. complied with the provisions of his juvenile sentence. As for his adult sentences, the State agreed to recommend a total sentence in the mid-range of the applicable grid box. The State also agreed to request that both adult sentences run concurrently with one another.

The district court ultimately accepted K.C.S.'s plea and sentenced him to a juvenile facility until he reached the age of 22 years and 6 months, at which point K.C.S. would go to an aftercare facility for another six months. The district court also sentenced K.C.S. as an adult, with a controlling sentence of 155 months of prison time. However, it stayed the adult sentence on the condition that K.C.S. complied with the terms of his juvenile sentence.

On September 2, 2016, K.C.S. was granted conditional release under the supervision of Sedgwick County Community Corrections. The following month, a supervising community corrections officer alleged that K.C.S. violated the terms of his conditional release by leaving his house without permission. On November 8, 2016, the State moved to revoke K.C.S.'s juvenile sentence and impose his adult sentence. In the

motion, the State alleged that K.C.S. violated the "Juvenile Field Services Gang Conditions Curfew" on numerous occasions.

On March 2, 2017, the State filed both a post-adjudication request for detention and a motion to revoke conditional release under K.S.A. 2017 Supp. 38-2375. A warrant was issued for K.C.S.'s arrest and he was taken into custody. On March 23, 2017, the State moved to revoke K.C.S.'s juvenile sentence and to lift the stay of execution on his adult sentences under K.S.A. 2017 Supp. 38-2364(b). Evidently, the motions were served on K.C.S.'s attorney, but they were not served on K.C.S. either personally or by certified mail.

On April 7, 2017, the district court held a hearing on the motion to revoke conditional release under K.S.A. 2017 Supp. 38-2375 and on the motion to revoke the stay of execution of K.C.S.'s adult sentences under K.S.A. 2017 Supp. 38-2364(b). K.C.S. personally appeared at the hearing with his attorney. At the hearing, the State offered the testimony of the supervising community corrections officer and of two police officers about K.C.S.'s violations of the terms of his conditional release. In addition, K.C.S. offered the testimony of his mother. He also testified on his own behalf before resting.

At the end of the hearing, the district court revoked K.C.S.'s conditional release under K.S.A. 2017 Supp. 38-2375 and imposed a six-month sanction. However, the district court found that it lacked jurisdiction to rule on the State's motion to lift the stay of execution of K.C.S.'s adult sentences under K.S.A. 2017 Supp. 38-2364(b). Specifically, the district court found that K.C.S. had not been served—either personally or by certified mail—with the notice of the reasons alleged to exist for revocation of the stay of execution of his adult sentence as required by K.S.A. 2017 Supp. 38-2364(b).

On April 20, 2017, the district court held another hearing at which both K.C.S. and his attorney were present. After hearing the argument of counsel and considering briefs

filed by the parties, the district court again determined that it lacked the authority to hear the motion to lift the stay of execution of K.C.S.'s adult sentences because he had not been served with a notice of the reasons in the manner required by K.S.A. 2017 Supp. 38-2364(b). At the conclusion of the hearing, the State personally served K.C.S. on the record in open court with notice of the reasons alleged to exist for revocation of the stay of execution of his adult sentence as required by K.S.A. 2017 Supp. 38-2364(b).

Finally, on June 15, 2017, the district court held another hearing. Once again, K.C.S. appeared in person and through his attorney. At the hearing, the district court found that K.C.S. had now been properly served with the statutorily required notice of the reasons alleged to exist for revocation of the stay of execution of his adult sentences. As such, the district court announced that it would set the matter for an evidentiary hearing to give both parties the opportunity to present evidence and additional testimony. The district court also advised the parties that it was "not saying how [it would] rule on the motion" until the parties had the opportunity to present evidence.

Notwithstanding the district court's willingness to hold an evidentiary hearing, K.C.S.'s attorney advised the court that it had already heard the evidence that the parties desired to present when it held the hearing on April 7, 2017. Specifically, K.C.S.'s attorney stated that both parties had presented their witnesses and cross-examined the other party's witnesses. Moreover, K.C.S.'s attorney noted that the district court had concluded after hearing the testimony presented that his client had violated the terms of his conditional release. Accordingly, K.C.S.'s attorney declined the opportunity for another evidentiary hearing on the motion to revoke the stay of execution of his client's adult sentences.

The district court then took a recess to allow the parties to discuss a possible agreement. The parties were ultimately able to agree to a reduction of the length of K.C.S.'s adult sentences by 36 months. At the end of the hearing, the district court found:

4

- that K.C.S. and his attorney had been served with notice as required by K.S.A. 2017 Supp. 38-2364(b);
- that the State had met its burden of proving the alleged violations committed by K.C.S. by a preponderance of the evidence through the testimony presented at the hearing held on April 7, 2017;
- that the stay of execution of the adult sentences should be lifted; and,
- that the adult sentences should be imposed under K.S.A. 2017 Supp. 38-2364.

In imposing the adult sentences, the district court adopted the agreement of the parties and reduced the total sentence from 155 to 119 months. Likewise, the district court ordered that K.C.S. should be given credit for "every day" he had served on his juvenile sentence or sanction. The district court also imposed 36 months of postrelease supervision. Subsequently, the district court filed an order journalizing its decision, and K.C.A. timely appealed.

ANALYSIS

On appeal, K.C.S. raises two issues. First, he maintains that he was denied proper statutory notice of the reasons alleged to exist for revocation of the stay of execution of his adult sentences as required by K.S.A. 2017 Supp. 38-2364(b). Second, he alleges that the district court's initial ruling that it did not have jurisdiction to lift the stay of his adult sentences precluded it from subsequently ruling on the issue.

To the extent that these issues require statutory interpretation, our review is unlimited. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The primary purpose of statutory interpretation is to give effect to the intent of the Legislature. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). The first step of statutory interpretation is to seek to determine the Legislature's intent by looking to the

5

words of the statute. In doing so, we are to give common words their ordinary meanings. *State v. Ryce*, 303 Kan. 899, 906, 368 P.3d 342 (2016), *aff'd on reh'g* 306 Kan. 682 (2017); see also *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

K.S.A. 2017 Supp. 38-2364(b) provides:

"When it appears that a person sentenced as an extended jurisdiction juvenile has violated one or more conditions of the juvenile sentence . . . the court, shall notify the juvenile offender and such juvenile offender's attorney of record, in writing by personal service, as provided in K.S.A. 60-303 . . . or certified mail, return receipt requested, of the reasons alleged to exist for revocation of the stay of execution of the adult sentence."

Under K.S.A. 2017 60-303(d)(1)(A), "personal service is effected by delivering or offering to deliver a copy of the process and petition or other document to the person to be served."

It is undisputed that K.C.S. had not yet been served with the reasons alleged to exist for revocation of the stay of execution of his adult sentence as required by K.S.A. 2017 Supp. 38-2364(b) at the time of the hearing held on April 7, 2017. But it is also undisputed that K.C.S. was personally served with the required statutory notice at the hearing held on April 20, 2017. Moreover, it is undisputed that K.C.S. was personally present at each of the hearings addressing the alleged violations of the terms of his conditional release as well as on the motion to revoke the stay of execution of his adult sentences.

We find it significant that the district court held a hearing on the motion to revoke the stay of the adult sentence on June 15, 2017, which was 10 weeks after K.C.S. was personally served with the notice required by K.S.A. 2017 Supp. 38-2364(b). Furthermore, we find it significant that the district court offered at the June 15th hearing to set the motion for a new evidentiary hearing but that K.C.S.'s attorney declined the

6

opportunity to do so. Specifically, K.C.S.'s attorney stated that there was no need for another hearing because "we've presented witnesses—both sides—[and] there was cross-examination by both sides" at the hearing held on April 7, 2017.

Under these circumstances, we do not find that it was error for the district court to rely on the testimony presented at the previous hearing to make its findings and conclusions at the hearing held on June 15, 2017. See *State v. Breedlove*, 295 Kan. 481, 488, 286 P.3d 1123 (2012) (reviewing the method employed in presenting admissible evidence from a prior hearing that was subject to cross-examination for abuse of judicial discretion). This is particularly true in light of the district court's readiness to set the motion for revocation of the stay of K.C.S.'s adult sentence for a new evidentiary hearing. Notwithstanding the district court's willingness to do so, the record reflects that K.C.S. chose to stand on the evidence presented at the hearing held on April 7, 2017—which was subject to cross-examination—and waived his right to set the matter for another evidentiary hearing when given that opportunity.

Finally, K.C.S. contends that collateral estoppel, double jeopardy, or the law of the case doctrine prohibited the district court from revoking the stay of his adult sentence. K.C.S. argues that because the district court did not revoke the stay of his adult sentence at the same time it found that he had violated the terms of his conditional release, it lacked the authority to decide the issue after personal service was obtained. We disagree.

As for the elements of collateral estoppel, the Kansas Supreme Court has held:

> "'Whether the doctrine of issue preclusion or claim preclusion applies in a certain situation is a question of law. An appellate court may analyze the question using unlimited de novo review. [Citation omitted.]' *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 396, 949 P.2d 602 (1997), *cert. denied* 525 U.S. 831 (1998).
>
> "'The requirements of collateral estoppel are (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate

7

facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity, and (3) the issue litigated must have been determined and necessary to support the judgment.'"*Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284 (2002).

"'The doctrine of collateral estoppel is different from the doctrine of res judicata. Instead of preventing a second assertion of the same claim or cause of action, the doctrine of collateral estoppel prevents a second litigation of the same issues between the same parties or their privies even in connection with a different claim or cause of action.' *Williams v. Evans*, 220 Kan. 394, Syl. ¶ 1, 552 P.2d 876 (1976)." *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 506, 86 P.3d 513 (2004).

Moreover, when applied to a criminal case, collateral estoppel means nothing more than double jeopardy. *State v. Pruitt*, 216 Kan. 103, 105, 531 P.2d 860 (1975), see *Ashe v. Swenson*, 397 U.S. 436, 442-45, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) (doctrine of collateral estoppel is incorporated into double-jeopardy protection of the Fifth Amendment to United States Constitution); *State v. Parry*, 51 Kan. App. 2d 928, 934, 358 P.3d 101 (2015), *aff'd* 305 Kan. 1189, 390 P.3d 879 (2017). On the other hand, the law of the case doctrine is "'a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so.' [Citation omitted.]" *State v. Collier*, 263 Kan. 629, 631, 952 P.2d 1326 (1998).

Here, the district court was presented with two independent—though interrelated—motions. First, it was presented with a motion alleging that K.C.S. violated the specified terms of his conditional release under K.S.A. 2017 Supp. 38-2375. Second, it was presented with a motion alleging that K.C.S. violated one of more conditions of his juvenile sentence under K.S.A. 2017 Supp. 38-2364(b). Although the district court relied on the same facts to conclude that K.C.S. violated both the terms of his conditional release from a juvenile facility and the conditions of his juvenile sentence, we find these to be two separate and distinct legal issues. Furthermore, in imposing the adult sentence—which was reduced by agreement of the parties—the district court made clear

8

that K.C.S. should be given credit for all time served, including the time served on the sanction imposed for violating the terms of his conditional release. Thus, we do not find that the doctrines of collateral estoppel, double jeopardy, or the law of the case to apply in this case.

In summary, we do not find that the district court committed error in ultimately lifting the stay of K.C.S.'s juvenile sentence and imposing his adult sentence as modified by agreement of the parties. Once service was properly obtained on K.C.S., the district court had the authority to move forward. Although the district court was willing to hold a new evidentiary hearing after K.C.S. had been served, his attorney chose to stand on the evidence that had been submitted previously to the district court. We, therefore, conclude that the district court did not error in lifting the stay of K.C.S.'s adult sentence after he had been personally served as required by K.S.A. 2017 Supp. 38-2364(b).

Affirmed.